argument not to exceed 15 minutes per side. Mr Bryant, you may proceed for the appellant. Good morning and may it please the court. My name is Melissa Salinas and I'm an attorney with the Federal Defender's Office. I'm the counsel of record in this case and I have the honor of introducing law student Joel Bryant. Alright, thank you very much. Welcome, Mr. Bryant. Thank you. Thank you, Your Honor. Good morning and may it please the court. My name is Joel Bryant and I represent the appellant, Ramon Clements. We're here this morning because Mr. Clements was convicted at the end of a fundamentally unfair trial. The government was allowed to use unfairly prejudicial, irrelevant, and inadmissible evidence related to animal cruelty allegations in order to secure the convictions. A series of errors by the district court allowed that to happen. I'd like to focus my time today on two particular issues. The cumulative weight of those errors and the handling of the animal cruelty related evidence specifically. With respect to the second issue, can you address the argument of whether that was weighed by the combined effect of what happened during what we in Texas call war dire. I understand you have a somewhat different pronunciation. And by the absence of any objection. Yes, Your Honor. There was an exchange during a voir dire which is the best French I can do, in which counsel had an off-the-record conversation with the district court. And the district court then issued specific explanation as to what would happen. And the court told the jury that they would hear why the search warrant was issued and why the arrest warrant was issued. But under United States v. Smith and United States v. Aparco Centeno which are the controlling cases in this court, affirmative waiver has to be specific. It has to be waiver with respect to the specific issue. So in those cases, for example, when counsel agreed that its proposed witness was not qualified as an expert, counsel was later forbidden from bringing that issue on appeal. That's not what we have here. In fact, we have no record as to exactly what defense counsel below agreed to. We have only the district court's explanation. And this court should not read or make assumptions as to what may have happened in that off-the-record conversation. Well, I mean, the district court did say that's fair, Teddy. It says yes with respect to the court's explanation of the parties before the agreement. Is that correct? Correct, Your Honor. So, I mean, that is eradication isn't it, of what the district court said? Now, I understand you would say what the district court said is pretty limited, but it is eradication by counsel of the court's description of their agreement during court hearings, right? Correct, Your Honor. And if we had an extensive record detailing agreement to admit the photographs and to admit each and every piece of evidence, then this issue would not be before the court. Why is that? I mean, the one thing you didn't say in the district court what happened was there was already a motion by the government on the table about this kind of evidence. So this is not something where people were caught by surprise. That's point one. And point two, you know, I know you agree with my counsel below, and maybe this is a 23-55 case at the end of the day, but it seemed like counsel for your client was the one who started bringing all this up into our hearing, and it's the government who says, okay, well, before we get carried away here, let's figure out what's going on because you've got this pending motion. The way I looked at it was the defense counsel had seen, okay, the government's got this motion. I think they're going to be able to get this in. I'm concerned about this, so I'm going to be the one to preempt this problem. And, you know, I wouldn't say it was necessarily a good decision, but it did seem to have a bit of a strategy in that what he's doing is educating the jury about what he thinks is going to be a very problematic part of the case, and he might have been very foolish to allow even any of this in, much less all of it, but that's the part that is hard for me, and I guess I would have thought if there's agreement about a subject matter coming in, there's agreement about a subject matter coming in, and having made that agreement, even if, let's just say the agreement is I'm going to agree that you can get an evidence on top of A, you may be right that technically that waiver doesn't cover every single part of A, but why isn't the defense counsel's duty when you go beyond A or what you think is A to say, okay, whoa, whoa, whoa, I thought we were doing this just for background as to why there was a warrant. You're now turning this into a case about dog bites, or dog shoots, I guess. So how do you respond to that? I agree, Your Honor, that defense counsel below had a duty to represent Mr. Clements, but this case is not about defense counsel's duty, it's about the district court's responsibility, and this court has made clear in its precedent that ineffective assistance counsels can't be heard, sorry, ineffective assistance appeals can't be heard unless the record is explicitly clear. We don't have that record, and so this is not an ineffective assistance appeal. I realize that, but when I was saying that I was just making the point that there may be a lot to that future claim. There may be, Your Honor, and we certainly respect your opinion on that. May be embraced. And Your Honor has obviously anticipated what may happen in future proceedings, but this court has established a plain error standard specifically to address these sorts of situations, and the district court has an independent responsibility to ensure that a defendant receives a fundamentally fair trial. In United States v. Moore, which is a Third Circuit case dealing with very similar issues, there's a very eloquent concurring opinion that lays out the difficulty that a district court faces in these situations, but also the district court's responsibility. In Moore, did the defendant testify? I don't know off the top of my head, Your Honor. Does it matter to the analysis that the defendant did testify here? No, it doesn't. If we were here appealing a sufficiency of the evidence at the close of trial, it would matter, but we're not. What we're asking this court to look at is the admission of the animal as a case in sheet, and that evidence was not admissible, either as just a background evidence or under Rule 404B, both on the merits and the procedure, which was not followed with respect to either type of evidence. Isn't that pretty conventional that you're allowed to explain why there was an arrest warrant? That seems to me a pretty fair game. Absolutely, Your Honor, and that's what the agreement between the parties represented, an agreement to tell the jury why the warrant was issued, not an agreement to admit pictures of the dog before and after it was shot, not an agreement to admit it. I get that. You're making all of the evidence. What you just said was this evidence was not allowed to be recognized yesterday, and I would have said surely some of it was. So your argument is all of it wasn't, right? My argument is that none of it was admissible. Not at all. But if the jury had been told what had happened, which was the agreement, or if what we had had was a single detective testify that there had been a shooting in a park, and that as a result of that investigation Mr. Clements had had a search warrant issued and then an arrest warrant issued, we wouldn't have this issue. Not even a shooting of a dog? Exactly, Your Honor. So it would be better to have the jury think that there was a shooting of a person? You may be right that there would be more sympathy for the shooting of a dog than the shooting of a person, but is it that limited? The jury should have heard that there was a shooting incident and had the judge or through a single government witness the government explain in a minimal way necessary to inform the jury as to the background to complete the story as res geste doctrine allows that would have been permissible. But to use the emotionally manipulative evidence regarding animal cruelty to put up Ms. Phillips, Ms. Deloge-Patterson, multiple local police officers, and several ATF agents and have them testify about the events of November 2012, events that had no connection to the charged offense, was inadmissible. Let's say that you're correct that the government that it was improper for the government to have this trial putting in a dog and shooting evidence. Why in your view is that not harmless at the end of the day given the pretty strong evidence that tied your client to the two different residences where the firearms material was found, given testimony from one of the witnesses that the derringer was in a car that I think belonged to the defendant or he was associated with, etc.? Well, Your Honor, I would first note that the testimony with respect to the car, Mr. Clements' car, was that the dog was shot with a pink .38 rifle. Entirely separate from that, wasn't there testimony from one witness a woman who said that she saw the derringer, she saw it in a car that belonged to him? Am I just wrong or am I misremembering? Truthfully, Your Honor, I don't recall that, but on rebuttal I would have an answer for you on that. I could be mistaken, but in any event, there was a fair amount of evidence here against your client. Why do you think that this was not harmless? Because as the district court identified, this was a contest of credibility. The government's circumstantial evidence against the defendant's testimony that it was not his gun. And when the government was allowed to poison the jury using this extremely emotionally manipulative evidence, this court can't be reasonably certain that the conviction was a reach on proper grounds. That's also an aspect of the cumulative error standard, which calls for reversal in the instance of a fundamentally unfair trial. So that even if a single error doesn't rise to the level of reversible error, the death by a thousand cuts strategy that happened in this case is grounds for reversal. Can I ask one other quick question, just to make sure I'm not getting this wrong. So, as I understand it, one of the things that was found in Nursery Avenue was a clipping from this paper article titled, Man Accused of Shooting a Horse to the Dog and Got It Unfound. Is that a different dog, or is this the same dog? It's the same dog that was shot in the park, Your Honor. There were also allegations. But can I just, you know, the question I want to ask which I want to get an answer to is, why doesn't that, since this was a self-destructive possession case, and most people don't go on, and it's an unusual clipping to say, why doesn't that somehow make, perhaps, make this relevant? This dog shooting evidence. I see my time's about to expire, if I may answer. Yeah, absolutely. Thank you. It doesn't make it relevant because the government did not need to prove that Mr. Clements lived in that house. They only needed to prove that he lived there. Well, wait, but proving that he lived there is pretty material and relevant, isn't it? It is, Your Honor. But even if they needed evidence to prove that, they had ample evidence, including the presence of the tattoo kit, the CPAP machine, his other personal belongings. The newspaper article, if it's considered under Rule 403, is far beyond what we would normally look at as unfairly prejudicial. In addition, it raises hearsay issues with respect to the fact that it's a newspaper article. Well, let's just say totally different case. You're under investigation for murdering somebody. That's totally different case. You don't have lots of clippings of articles. You have a clipping of an article about that murder. It's found in where you're living. That's not highly relevant. I don't understand how that's kept out. Isn't that highly relevant? Circumstantial evidence? It may be in a specific case. The issue in this case, though, Your Honor, is that it wasn't just one newspaper article. It wasn't just one... Thank you very much. All right, we have a comment from the Captain and Ms. Ford. Good morning, Your Honor. My name is Laura Ford, and I'm here on behalf of the United States. Your Honor, Clements has suggested in his reply brief that the agreement between the parties was limited, his background evidence was limited to the opening and closing statements. That's wrong, and it's not supported by the record. On page 392, after the Court described the agreement, and Defense Counsel was describing on the topic of the shooting, he told prospective jurors that he expected that there may be some conflicting testimony, not opening or closing statements, testimony, in this case, that has to almost come in just to explain why we're here. There's no doubt that there was an agreement in this case that this testimony would come in as background evidence. That half the trial that we spent talking about was a dog shooting. We're supposed to infer from the District Court saying we're going to explain to the jury why they were searching these places. We're going to infer from that that the defendant has affirmatively agreed that half of the government's witnesses believe about shooting a dog, which is, I think any of us would say, potentially, it's prejudicial in the classic sense of the word. So, I mean, is it your position that that amounts to an agreement, that half the trial is going to comprise this? Your Honor, this testimony was not a surprise to Cronin. He knew exactly why. Is it your position that that description in the record and explanation will be provided? Is an affirmative waiver as to half the testimony be this evidence? Yes, Your Honor, and here's why. Because, you know, he even put on notice of what this testimony was going to be, and that notice specifically stated that he'd been provided this evidence. That sounds like forfeiture. He has forfeited the issue. He absolutely has forfeited the issue. Well, we're talking about the difference between waiver and forfeiture, right? Well, no. Obviously, he's forfeited it. Well, I would say he's actually waived because he went down one path, and he never corrected the record and said, wait a minute, this is beyond scope. He knew what the evidence was going to be. He'd been provided that. It's that page ID, 34 inches of gravel. So we're all on the same page as to the consequences of these terms. The consequences are waived, but waiver are we don't get it. We don't even think about it. We waived it. It's over. We don't even ask ourselves how bad the error was or the impact. If it's forfeiture, it's cleaner. So we're on the same page. Correct. Do you think it's both? No, no. I don't think he's waived or in this case. Because if he had a disagreement with us, he had an obligation to object. That's not a forfeiture. No. It goes a step beyond that because he would not have raised the issue himself before the prospective jurors, and he did not object or say, wait a minute, Judge, this is not what I agreed on. And he actually had three opportunities before the trial even started. At page 390, after the court explained the agreement, it said, have I stated that correctly? Does that clear it up on the next page? I think you're mixing two different issues. I mean, if he agreed, in fact, to something much more narrow, and then the government proceeds to introduce evidence that is far beyond that agreement, the absence of an objection to that breach of the agreement, so to speak, would be a forfeiture. Not extending the agreement itself. I disagree. Since the court had explained what the agreement was, if this exceeded the agreement, then he absolutely had the obligation to correct the record and say, wait a minute, Judge, this is not what we signed on it for. Assume with us for a minute that it is a forfeiture rather than a waiver. That his failure to object to the extent of the evidence that came down did trigger plain error review. Can you give us your position on if plain error applies? It nonetheless affirmed the agreement. If plain error applies, I mean, the evidence in this case was overwhelming. I mean, even if you stripped away that evidence, you have Mr. Clement's things surrounding the bullets at the first residence, and his belongings are surrounding the firearm in the stable. I mean, there's some key things on this table that tie the belongings to Mr. Clement's. You've got this cable bill, you've got the CPAP machine. At the end of the day, the evidence that he constructively possessed the firearm and the bullets was overwhelming in this case. Are you familiar with our case of the United States v. Jenkins, where we vacated a conviction in a constructive possession of a drug misdemeanor charge? I don't recall that. I mean, it wasn't plain error, but in that case, again, constructive possession is the issue. In that case, the government introduces improper for the evidence. The issue is whether the question is, is it overwhelming, the evidence of the defendant's guilt. Some of the drugs in the pistol were found right next to his driver's license and a bunch of his mail, and we said it's not overwhelming. I mean, that case would seem to be one that would be pretty important, potentially, to our analysis, but it's our case. Well, Your Honor, I do think the evidence was overwhelming in this case. I mean, there was no evidence that somebody else lived at this residence. I mean, everything there was clemency surrounding this firearm. You know, this evidence that was searched. And I do want to mention that going back to the evidence, the fact that he did not object, that when the parties and district court discussed the exhibits, defense counsel said that the government's exhibits were, quote, all fine, and that's at page 9791. There was absolutely no objection to that. I mean, if the evidence is so strong, the evidence of the actual crime is so strong, why in the world would the government spend half its trial putting on evidence about how the dog was barking in this, you know, really high-pitched, frantic way as it's getting shot, putting on photographs of the dog before it's shot, after it's shot, et cetera? Half the trial. I mean, why isn't that just egregious? An egregious violation of foreign law? Your Honor, I believe that that was relevant. But the fact that he recently had a firearm is relevant to showing his knowledge. He's familiar with firearms. You can see that there. He's got 15 criminal convictions. You're telling us that he had to... Well, granted, the jury didn't know that. But, I mean, the idea that we're going to have half the trial be about the terrible stuff that is done to this dog so that, you know, the jury knows he's familiar with firearms, I mean, that is just not something personally I can take seriously. You can do that without graphic photographs of a tortured animal. Well, I would encourage the Court to look at the photograph. I don't think it's irrelevant to the issues in the courts. Well, it's not particularly gory. I wouldn't even know if the dog had been shot if I didn't know better. I think reasonable rights might differ on that point. Do you have an explanation? I know you can't read the mind of the... Were you the trial counsel? No, I was not. I'm just trying to figure out what the defense counsel was thinking when they get this notice, the government wants to introduce this, and they start going down the road for a year, and I'm just trying to figure out if they thought, oh, we're going to turn it into a case about whether we would issue the dog, whether he thought his hand was stronger. I still don't understand what he was thinking, and I'm wondering if you had any thoughts on that. I can't explain that. What I can tell you is that I did speak with the prosecutors in this case, and they told me that there absolutely was this agreement. Unfortunately, it was off the record. Now, with respect to perhaps that's a valid claim for a 2255 vote, it's not adequately developed in this case because we don't know what the strategy was. Maybe that was the strategy to try to make it confusing and try to make it about the dog. I don't know. We can't answer that at this time. Can I ask you the same question I asked the opposing counsel, which is does the fact that the defendant in this case did choose to testify, does that alter the analysis at all? Is there evidence that would have come in when he took the stand, even if it was improperly admitted in the case in chief that the government presented, would some of this evidence nonetheless have been admissible when the defendant collected the testimony? Certainly the evidence about the newspaper article would have because that ties him to the residence that would come in. The testimony about the dog being in the basement, that was certainly relevant with respect to his control of the environment. Maybe I'm wrong here, but wasn't that a different dog? Yes, that's a different dog. I'm sorry. I don't think one dog gets in, but in all tongues. So how are you responding to Judge Rosenfeld's question on deciding to testify, and so the point is, does it make a difference in terms of what might have come in? I don't think the fact that there's another dog in the basement has anything to do with it. The clipping has something to do with it. Certainly. That ties the defendant to the residence, and certainly the fact that he was living there was highly relevant to tying him to this gun that's in the house. But the fact that the details of the shooting of the other dog probably don't come in there if they weren't already there. The only thing I can think of is that newspaper for women, so it comes to mind immediately. But even this court decides that this issue is not waived, but rather forfeited, the government's position is that the evidence was overhauled. But even if you take that away, you have evidence that his things were surrounding this. There was no other evidence that somebody else possessed it. And even if there was somebody else that was living there, that kind of misses the point, because you can't jointly constructively possess higher art. And for those reasons, Your Honor, unless this court has further questions. What about, just real briefly, what about the argument that in at least one of these locations, 20 to 30 people were screaming in and out of there every day trying to get tattoos, which the stereotypical view is a population group that might have a higher percentage of likelihood to possess firearms than perhaps other groups. Well, number one. First of all, that's Clemens' view, and if you're looking even if our position is that we're under manifesting justice standard for looking at the sufficiency of the evidence, because he did a Rule 29 motion, but even if you have full review, you're looking at the evidence in the light most favorable to the government. Clemens already demonstrated he's not a credible witness. He was impeached on the stand about having permission to live with the convicted felon. So I would say that's not credible. But again, this is his residence. The ammunition, the bolts that were found in his residence were immediately noticeable. The officer testified that you could see them when he entered the room. It's HID 464. So again, there's more than one person that could constructively possess the ammunition. So even if there were other people that were going through there, I think you might have a different case if maybe they were in some corner behind a chair and somebody was getting a tattoo, and you wouldn't notice it right away, but they were right there out in the open, and for that reason it really doesn't help him, the fact that there might have been other people. But again, that's his version of the events. All right. Thank you very much. I appreciate it. Brian. Thank you, Your Honors. I'd just like to clarify a couple quick points and then use my time to address the issue of whether the evidence was overwhelming. First, Judge Kavlich, I'm not able to locate any witness testimony. I'll leave it at that. Secondly, Your Honors, the Governance Council has suggested and invited this Court to speculate that there was an agreement off the record. I would like to let this Court know that Mr. Clement's appellate counsel contacted the Governance Trial Council to inquire as to whether there were any substantive decisions or rulings that had been made off the record after we reviewed this very sparse transcript to inquire as to whether an amended or supplemental record was necessary, and the Governance Trial Council told us that that was not necessary. So this is my invitation to speculate about what is not on the record. With respect to the evidence that exists in this case, the question is not simply, is there a lot of evidence? The question is not whether the gun was within 6 inches or 8 inches or 6 feet of the tattoo kit or any other piece of Mr. Clement's property. The issue is, given what actually happened at trial, a trial where the word was reiterated 34 times in front of the jury, can this Court be reasonably certain that the conviction was reached on a proper basis? It reasonably certainly sounds like the harmless error standard, not the plain error standard. I don't think plain error requires that. There's parts 3 and 4, right, of plain error? Right. The harm prongs, if you will, of the plain error standard. And that goes to whether substantial rights are affected. And this Court and other courts, in particular the Moore Court, which applies the same plain error standard in the Third Circuit, have taken that are substantial rights affected? To me, can the appeals court be reasonably certain that the conviction was reached on a proper basis and properly admitted evidence? In light of the inadmissible evidence that also went into the jury's consideration. And cases like Old Chief and Clay, United States v. Clay, which is a decision in this Court, Hardy, United States v. Hardy, the 2001 case, which is another decision in this Court, tell us that this sort of emotionally powerful, emotionally manipulative evidence is exactly the thing that leads juries to draw improper inferences and makes it impossible to say that convictions were reached on a proper basis. The evidence in this case was not overwhelming. There was – it was not the same gun related to the dog shooting. It was not the same bullets. There were no eyewitnesses, no forensics. All we have is a messy apartment. I see my time has expired. Going back to the clipping, the clipping proves that they were able to get some evidence. I don't understand how the clipping wouldn't be able to put in some dog evidence. I'm really seeking clarification on the question I asked you the first time around. This isn't a debate about whether some is allowed, even putting aside forfeiture and waiver. There's just no doubt some can comes in. The question is over here, probably not. Don't you think that's fair? What do you think about it? I think that's a valid characterization of the case, Your Honor, that if the government had done nothing other than introduce the newspaper article and then had the trial judge given a proper instruction as he was required to do with respect to – No, no, no. The article assuredly comes in. Once the article is in, you're allowed to put some evidence in that he was a suspect for that crime. I mean, I don't understand how you would be not allowed to do that. That's what I mean by saying that on both sides of the equation comes in. The question is probably not afterwards. I think that's a valid point and it gets to statements that this Court has made with respect to background evidence, that it has to have severe limitations. Otherwise, it becomes a backdoor to get around Rule 404B. And that's exactly what we saw here. As the Court pointed out, the government piled on with – Was there an instruction saw in this? I don't remember. There was an instruction suggested by the government the pattern instruction for 404B evidence was not given, Your Honor. I mean, your predecessor counsel didn't say anything. I'm going to guess. Correct, Your Honor. And you said they have a messy apartment and your light came on. I was curious about the rest of your sentence. You said all they have is a messy apartment. And that is admissible circumstantial evidence, but it's far short of overwhelming. Even though it was his mess. It was his seatback machine. It was his information on caffeine. It was his computer that was upstairs. It was clearly his mess. Some of it was his mess, Your Honor. We had three women's dresses in the house. The woman who was living there, I mean, that was all three dresses. Your Honor, I would suggest that in the economic circumstances of the individuals involved in this case, we shouldn't assume the same range of possessions that we might find in the typical American household. Fair enough. My last quick question. Any evidence that any of the belongings items were ever on these tables, you know, that were so messy, on which the gumballs were found, any evidence that any of the other stuff belonged to other people? Yes, Your Honor. There was testimony that the gloves were used for Ms. Poppington's medical needs because she had to take injections to deal with her sickle cell lumbium. That's not in the objections. The record suggests that Mr. Clements and Ms. Poppington both were involved in delivering Ms. Poppington's injections. And I would note, Your Honor, that the testimony from the ATF agents was that the gun was found partially underneath the gloves. And so if there's one piece of evidence on that table that's significant as to who owns it or who doesn't, it's the gloves. Should we say that Mr. Clements would wear the gloves to inject Ms. Poppington? That's what the record... ...if they were a further tie to Mr. Clements? The record indicates that both individuals used the gloves. But if the question, and if the government's argument is that ownership of the firearm, we're not asking as we would in a sufficiency case whether any reasonable jury would believe it. We're asking whether the evidence is overwhelming, and it just simply is not. And therefore, we would respectfully ask this Court to reverse the conviction and remand for a new trial or any alternative for resentencing for the reasons stated in our briefs. All right. Thank you to both of you for excellent briefs and oral arguments. Thank you, Ms. Linus, for supervising. I'm going to guess, having watched Mr. Bryant, I don't know how much supervision he required. I think he might be in a position where he can't teach in the class. Congratulations. Is it the University of Michigan? Yes. They're doing a great job with you. So thank you very much. That was just very helpful, and Mr. Clements, it's very lucky to have you. So the case will be submitted.